OPINION OF THE COURT
Wayne P. Saitta, J.
Defendants AT & T Wireless Services, Inc. and Palisades Collection, LLC (hereinafter defendants), move this court for an or *756 der pursuant to CPLR 3211 (a) (5) and (7) seeking to dismiss the plaintiffs amended complaint, and granting further relief as this court deems just and proper.
Defendants AT & T Wireless Services, Inc. and Palisades Collection, LLC’s motions to dismiss are denied for the reasons set forth below.
Facts
Raqui Lindor, a person unrelated to plaintiff Rachel Lindor, had a consumer debt with defendant AT & T Wireless Services, Inc. (hereinafter AT & T).
AT & T hired Palisades Collection, LLC (hereinafter Palisades), to pursue the debt it claimed from Raqui Lindor. On February 28, 2005, Palisades’ attorneys, Forster and Garbus, commenced an action against Raqui Lindor by summons and complaint which incorrectly listed plaintiffs address as Raqui Lindor’s address. A default judgment was taken against Raqui Lindor on May 9, 2005, and the judgment incorrectly listed plaintiffs address as Raqui Lindor’s address.
TransUnion LLC (hereinafter TransUnion), a credit reporting agency, thereafter erroneously posted the judgment against Raqui Lindor, which bore plaintiffs address, on plaintiff Rachel Lindor’s credit report and sent it to plaintiffs student loan lender.
Plaintiff claims that based on the information in the credit report, her lender denied her student loan. Plaintiff further alleges that as a result of losing her student loan, and a series of events which resulted from the loss of her loan, she was forced to leave college.
Defendants do not claim that plaintiff and Raqui Lindor shared similar addresses, Social Security numbers, or dates of birth. Plaintiff did not use AT & T as a service provider. It is conceded by all parties that plaintiff had no involvement with Raqui Lindor or her AT & T debt, and that their only connection is the similarity in their names.
Plaintiff filed an action in federal court asserting both federal and state claims. Her federal claim based on the Federal Fair Credit Reporting Act was dismissed as being beyond the applicable statute of limitations. The United States District Court for the Eastern District of New York declined to exercise supplemental jurisdiction over the remaining state claims and dismissed those without prejudice.
*757 Plaintiff commenced the present action based on common-law tort and several causes of action pursuant to the New York State Fair Credit Reporting Act against Transllnion only.
Both defendants AT & T and Palisades move to dismiss the plaintiffs amended complaint as against them for having been commenced after the time permitted under the statute of limitations, and for failing to state a cause of action upon which relief can be granted.
The motions before the court do not relate to plaintiffs causes of action based on the New York State Fair Credit Reporting Act.
Arguments
AT & T and Palisades argue that the undisputed facts demonstrate that plaintiff failed to file this action within the statute of limitations period. They argue that the statute of limitations period began to run when plaintiffs address was incorrectly listed on the collection action against Raqui Lindor. The collection action against Raqui Lindor was commenced on February 28, 2005, more than three years prior to this action.
Palisades further argues that plaintiff is estopped from seeking to hold defendants liable because the judge in the federal action determined that TransUnion’s listing Raqui Lindor’s debt on plaintiffs credit report was the sole cause of plaintiffs injuries.
Both moving defendants further argue that they had no duty to the plaintiff and therefore cannot be liable to her in tort.
Plaintiff argues that the statute of limitations began to run when she was denied her loan, not when her address was improperly listed on the action or the judgment against Raqui Lindor, and therefore this action was timely commenced.
Plaintiff further argues that the defendants do have a duty to persons they harm through their affirmative acts.
Finally, plaintiff denies that she is estopped by the federal court decision, which was against a different party than the parties named in the present action.
Analysis
Statute of Limitations
Plaintiff filed her complaint against the defendants on August 31, 2009. Plaintiff’s claims against the movants sound in common-law tort. They are not based on the State Fair Credit Reporting Act.
*758 Generally, “the three year Statute of Limitations applicable to a ‘negligence’ action like the one at bar, which does not involve exposure to toxic substances (cf., CPLR 214-c), commences to run on the date of the ‘occurrence’ of the injury, not on the date when it was ‘discovered’.” (Playford v Phelps Mem. Hosp. Ctr, 254 AD2d 471, 471-472 [2d Dept 1998].)
In Barrell v Glen Oaks Vil. Owners, Inc. (29 AD3d 612, 613 [2d Dept 2006]), the Second Department stated that “a cause of action for personal injuries, whether sounding in negligence, malpractice, or products liability, accrues at the time of injury” (quoting Fleishman v Lilly & Co., 96 AD2d 825, 825 [concurring mem, 1983], affd 62 NY2d 888 [1984], cert denied 469 US 1192 [1985]).
The questions are, what was plaintiffs injury, and when did it occur.
If the injury occurred, as the defendants argue, when plaintiffs address was incorrectly used as Raqui Lindor’s address in the lawsuit against Raqui Lindor, then plaintiffs action is time-barred.
If, however, the injury occurred on or after August 31, 2006, when plaintiff alleges she was denied her student loan, then the action would be timely.
“[A]ccrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint” (Barrell v Glen Oaks Vil. Owners, Inc., 29 AD3d at 613, quoting Snyder v Town Insulation, 81 NY2d 429, 432 [1993]).
There had to be more than a possibility of a future injury for plaintiff to allege a cause of action. Plaintiff had to have actually been injured to be able to state her claim; without an injury, there is no basis upon which to seek relief.
Although plaintiff’s address was mistakenly listed as Raqui Lindor’s address on Raqui Lindor’s judgment, and subsequently the debt of Raqui Lindor was listed on plaintiffs credit report, plaintiff suffered no tortious injury until she was denied her student loan. Plaintiffs address being mistakenly listed on the judgment and credit report created the potential for injury, but until the loan was actually denied, there was no injury to the plaintiff. While negligently misrepresenting a person’s credit history may be sufficient for a private cause of action for violation of the Federal or State Fair Credit Reporting Act (15 USC § 1681 et seq.\ General Business Law § 380 et seq.), alone it is not a basis for a common-law tort action.
*759 As it is not contested that plaintiffs loan was denied on or after August 31, 2006, her complaint, commenced on August 31, 2009 is not barred by the three-year statute of limitations.
U.S. District Court Judge Cogan dismissed plaintiffs federal claim that TransUnion violated the Federal Fair Credit Reporting Act (FCRA), as barred by the statute of limitations. He held that the statute of limitations began to run upon plaintiffs discovery that TransUnion had violated the Act when it reported the judgment against Raqui Lindor on plaintiffs credit report.
However, plaintiffs claims against the movants herein are different than the claims pursuant to the Federal Fair Credit Reporting Act. The FCRA governs the duties of credit reporting agencies, such as TransUnion, and imposes upon them a duty to adopt reasonable procedures to ensure the accuracy of their reports. (FCRA § 1681 [b].) The FCRA provides for a private cause of action by consumers against credit reporting agencies which fail to comply with the act. (§ 1681o.) Section 168lp of the FCRA provides that such a private action must be commenced not later than the earlier of:
“(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis of such liability; or
“(2) 5 years after the date on which the violation that is the basis for such liability occurs.”
Judge Cogan’s decision dismissing the federal claim on statute of limitations grounds is not applicable to plaintiffs current common-law tort claims for three reasons.
First, the statute of limitations is triggered by different events for each claim. The statute starts to run on a claim pursuant to the FCRA from either the violation of the Act or the discovery of the violation of the Act. On a tort claim, the statute starts to run from the date of injury.
Second, Judge Cogan measured the statute of limitations from plaintiffs discovery of the violation. Plaintiff filed the federal action within five years of the violation but failed to do so within two years of her discovery of the violation. As discussed above, the New York three-year statute of limitations for torts begins to run from injury, not from notice.
Third, in his decision, Judge Cogan found that plaintiff had notice of all of the facts necessary to know there was a violation of the Act by December 4, 2006, which was more than two years before plaintiff started her federal action. Even if one were to adopt December 4, 2006 as the date the statute of limitations *760 began to run, this present action would not be untimely as it was commenced within three years of December 4, 2006.
Collateral Estoppel
Defendant Palisades argues that plaintiff is collaterally estopped from asserting a claim against it because Judge Cogan’s finding that TransUnion was the sole cause of the plaintiffs injury precludes plaintiff from alleging that the defendants herein were proximate causes of plaintiffs injury.
In particular, Palisades relies on Judge Cogan’s finding that “[Plaintiffs] injury was caused by TRANSUNION listing a judgment on her credit report; whether it violated the law is a separate question, but there is no doubt that it was the listing of the judgment and nothing more which caused her injury.”
However the issue before Judge Cogan, the causality of a violation of the FCRA (15 USC § 1681e [b]), is a different issue from the causality of plaintiff being denied her loan, the injury claimed in this case. The federal court was not called upon to decide the causality of the loss of plaintiffs student loan, and accordingly Judge Cogan’s decision cannot be a basis for collaterally estopping plaintiff from pursuing a tort claim.
Further, the alleged acts of Palisades and AT & T do not come within the scope of the FCRA because Palisades and AT & T are neither credit reporting agencies nor are they subsequent users of credit reports. Therefore they could not have be held liable for any violation of the FCRA. Since Palisades and AT & T could not have been liable to plaintiff under the FCRA, the issue of their role in causing plaintiffs injury was not adjudicated in the federal action. Therefore plaintiff cannot be estopped in this case from seeking to hold them liable for the loss of her loan.
The violation of the FCRA alleged in the federal action was the inaccurate listing of Raqui Lindor’s judgment on the credit report. Since TransUnion was the only party that was a credit reporting agency, TransUnion was the sole cause of the violation of the Act. However, as to plaintiffs common-law tort claim based on her loan being denied, there could be severed causes of her injury.
Indeed, in this case it is clear that plaintiffs injury, the denial of her loan, was the result of several acts. Palisades and AT & T listed the plaintiffs address on the lawsuit and the judgment, which led to TransUnion listing the judgment on plaintiff’s credit report, which in turn led to the denial of her loan. *761 Whether each of these acts was negligent is a separate question from whether each is a proximate cause of the injury.
Duty to the Plaintiff
A duty is an enforceable obligation where one party owes a standard of conduct to another. The duty must be specific to an individual. A defendant cannot be held to have a duty to a plaintiff simply by a plaintiff being a member of society.
The issue in this case is whether defendants owed plaintiff a duty not to negligently attach her address to someone else’s judgment. Whether or not the moving defendants failed to use reasonable care in attaching plaintiffs address to the judgment is a question distinct from whether they had a duty toward plaintiff not to do so. Whether a duty exists is a determination to be made by the Court. (Prosser, Torts § 37, at 206 [4th ed].)
Defendants cite the case of Hamilton v Beretta U.S.A. Corp. (96 NY2d 222 [2001]) for the proposition that no duty can exist to members of the general public, and that foreseeability does not define duty but merely defines the scope of duty once it is found to exist. The Hamilton Court reasoned that to permit otherwise would expose an “actor to limitless liability to an indeterminate class of persons conceivably injured by any negligence” in an act. {Id. at 232 [internal quotation marks omitted].)
In Hamilton, the plaintiffs were persons who had been shot by guns, or were survivors of those who had been shot by guns. The plaintiffs sought to hold manufacturers of the guns used by their assailants liable for their injuries. The plaintiffs in Hamilton complained of the defendants’ failing to take action to protect the public from misuse of their product by third persons.
The Hamilton Court declined to conclude that the gun manufacturers owed the plaintiffs a duty, finding in part that finding such broad liability of such a potentially large group of plaintiffs “should not be imposed without a more tangible showing that defendants were a direct link in the causal chain that resulted in plaintiffs’ injuries.” {Id. at 234.)
In a case where an incorrect name is put on a lawsuit or judgment, members of the public in general are not potential plaintiffs and therefore there is no risk of “limitless liability” to an “indeterminate class of persons.” The potential plaintiffs are only those individuals whose identifying information the defendants have erroneously connected to another party’s judgment.
*762 Here due to the nature of the alleged negligence, attaching plaintiff Rachel Lindor’s address to a judgment against Raqui Lindor, defendants’ acts only created potential liability to people who lived at plaintiffs address, and who had the same or similar name to Raqui Lindor.
A more analogous situation than the Hamilton third-party products liability analysis is one where a libelous statement is not targeted to a specific individual, but is made about a group. In that analysis, the plaintiff must show that the defamatory statement was published “of and concerning him,” as a member of the defamed group. (Julian v American Bus. Consultants, 2 NY2d 1, 17 [1956].)
In Brady v Ottaway Newspapers (84 AD2d 226, 227 [2d Dept 1981]), a group of unindicted police officers commenced an action against the defendant newspaper for publishing an editorial statement which read, “It is inconceivable to us that so much misconduct could have taken place without the guilty knowledge of the unindicted members of the department.” The newspaper argued that the plaintiffs, as unnamed members, had not been harmed by the statement.
In finding that the statement was actionable by members of the group, the Court considered not only the size of the group, but also the intensity of suspicion which the statement cast upon individual members of the group. (Id. at 238.) Where a group is a recognizable whole, definite in its size and composition, rather than an indeterminate class, the presumption that the remarks apply to its members under the intensity of suspicion test is increased, which increases the likelihood that the defendant’s actions caused them harm.
In the situation before this court, much like in the group libel situation, the defendants’ affirmative acts were directed at a small recognizable group of people, rather than an indeterminate class. In this case, the group of persons potentially harmed by movants’ error consisted of persons with the same last name and similar first name to Raqui Lindor who resided at plaintiffs address.
Defendants owe a duty to take reasonable steps in performing their work, and to take reasonable steps to ensure they do not link a debt to the wrong party. Wdiether in this case AT & T and Palisades were negligent in attaching plaintiffs address to the judgment against Raqui Lindor is a separate question, and one for a jury to decide.
*763 Defendants also cite Hamilton for the proposition that “[a] defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control.” (Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 233 [2001]; see also Cook v Schapiro, 58 AD3d 664 [2d Dept 2009].)
However, the fact that the injury was caused by an intervening third party does not always relieve a tortfeasor from liability for their own acts which contributed to the injury.
“[W]here the acts of a third person intervene between the defendant’s conduct and the plaintiff’s injury, liability depends upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant’s negligence.” (Maida v Velella, 124 AD2d 561, 563 [3d Dept 1986], mod 69 NY2d 1026 [1987].)
The Court of Appeals also held that
“[a]n intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant’s negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant. When, however, the intervening act is a natural and foreseeable consequence of a circumstance created by defendant, liability will subsist.” (Kush v City of Buffalo, 59 NY2d 26, 33 [1983] [citations omitted]; see also Prosser, Torts § 44, at 272-280 [4th ed].)
Here, TransUnion erroneously listing the debt of Raqui Lindor on Rachel Lindor’s credit report as a result of Rachel Lindor’s address being put on the judgment was not so extraordinary or unusual as to attenuate Palisades’ and AT & T’s liability if they are found to have acted negligently.
Defendants are in the business of attempting to collect debts. They ultimately make a public record of the outcome of their work and it is expected that this information will be used by credit reporting agencies. They have a duty to make a reasonable effort to get the information right, to avoid harm to innocent, similarly named parties.
Defendants had a duty to the plaintiff to take reasonable care in the collection of a debt of someone similarly named. Whether in this case defendants breached their duty to plaintiff is a question of fact for the jury.
*764 Wherefore, defendants AT & T’s and Palisades’ motions to dismiss are denied.